**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HEIDI WILLFORD a/k/a Celeste Willford,

               Plaintiff,

      -against-

UNITED AIRLINES, INC.,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 0 7 2021

MEMORANDUM DECISION
AND ORDER

18 Civ. 1060 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Heidi Willford brings this action alleging that her former employer, Defendant United Airlines, Inc., discriminated against her on the basis of gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law, N.Y. Exec. L. §§ 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. Admin. Code § 8-101 *et seq.* ("NYCHRL"). (Compl. ECF No. 5, ¶¶ 63–67, 72–75, 80–83.) Plaintiff also alleges that United discriminated against her on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), the NYSHRL, and the NYCHRL. (Id. ¶¶ 68–71, 76–79, 84–87.) Finally, Plaintiff alleges interference and retaliation under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA"). (Compl. ¶ 88–97.)

United moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment to dismiss Plaintiff's Complaint in its entirety. United's motion for summary judgment is GRANTED

1

## I.   FACTUAL BACKGROUND

United is an international airline company headquartered in Chicago, Illinois, which, as relevant here, operates flights out of Dulles International Airport in Washington, D.C., Newark International Airport in Newark, New Jersey, and John F. Kennedy International Airport in New York, New York. (Def.'s Reply Stmt. of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Reply Rule 56.1 Stmt."), ECF No.148-1, ¶ 1.)  Plaintiff was employed as a flight attendant by United from March 2006 until February 22, 2016.  (*Id.* ¶ 4.)  At all relevant times, Plaintiff lived in New York City, but was based out of Dulles in Washington, D.C.  (*Id.* ¶ 6.)

Throughout the course of her employment with United, Plaintiff applied and was approved for numerous intermittent and block leaves under the FMLA.  (*Id.* ¶¶ 16–21.)  These leaves were related to Plaintiff's foot and spine disabilities.  (*Id.*; Compl. ¶ 17.)  In June 2015, Plaintiff began the process of in vitro fertilization ("IVF') at Weill Cornell Hospital in New York City.  (*Id.* ¶ 10; Compl. ¶ 17.)  On October 23, 2015, Plaintiff requested a three-month emergency transfer from Dulles to Newark.  (Reply Rule 56.1 Stmt. ¶ 28.)  The basis for Plaintiff's request, in part, was to ease her commuting burden from D.C. to New York to receive her IVF treatments.  (*Id.* ¶ 29.)  On November 4, Elizabeth Cavanaugh (United's Labor Representative), informed Plaintiff that her emergency transfer request had been denied.  (*Id.* ¶ 32, 35.)  Cavanaugh explained that Plaintiff had the option of applying for family medical leave for her IVF treatments and that a standard transfer to Newark was available to Plaintiff.  (*Id.* ¶¶ 33, 36, Ex. I.)  Plaintiff was also informed by her direct supervisor, Winson Waterman, that her emergency transfer request had been denied, although he played no role in the decision.  (*Id.* ¶ 40, 42.)  In delivering the news, Mr. Waterman allegedly remarked to Plaintiff that if she "wanted to take time off to be a mother, then this wasn't the job for [her] and [she] should quit."  (*Id.* ¶ 41.)

It is undisputed that Plaintiff explained to Cavanaugh that she did not want a standard transfer because she did not want to be "stuck" in the New York City area and that an extended medical leave of absence would not work for her for financial reasons. (*Id.* ¶ 30.) Plaintiff later requested a standard transfer in December 2015, and on January 4, 2016 submitted an FMLA request seeking to retroactively cover an absence for her IVF treatment that occurred from November 27, 2015 to December 7, 2015. (*Id.* ¶ 43.) While Plaintiff's retroactive request was denied, a later request, submitted on January 14, 2016, for block FMLA leave related to IVF treatment was approved. (*Id.* ¶ 45; Compl. ¶ 32.)

In late December 2015, Plaintiff worked a four-day round trip flight to Brazil. (*Id.* ¶ 49.) Plaintiff returned from Brazil and landed at Dulles in the early morning hours of December 30, 2015. (*Id.* ¶ 50.) Plaintiff was on "Reserve" status upon landing, which is a form of being "on call" that requires a flight attendant to be at the airport to work a flight within four hours. (*Id.* ¶¶ 51–52.) Despite knowing that she was on Reserve status, Plaintiff immediately flew home to New York and was "pretty sure" she would not be able to come back to Dulles for work the following day. (*Id.* ¶ 51, 53.)

On the evening of December 30, Plaintiff was assigned to work a flight from Dulles to Los Angeles scheduled to leave at 7:38 a.m. the next day (December 31, 2015). (*Id.* ¶ 54.) Plaintiff immediately attempted to trade this assignment for one with a later check in time, but was unable to do so. (*Id.* ¶¶ 55, 56.) Late in the evening on December 30, at approximately 10:51 p.m., Plaintiff called the Flight Attendant Support Team and informed them that she would "like to call in FMLA" for herself for the next day. (*Id.* ¶ 57.) Plaintiff gave the FMLA file number related to her spinal condition. (*Id.* ¶ 59.) Plaintiff's activation of her FMLA leave relieved her from working the following day. (*Id.* ¶ 60.)

At approximately 8:37 a.m. on December 31, 2015, just under 10 hours after activating her FMLA leave, Plaintiff called the Dulles crew desk and volunteered to work a flight leaving out of JFK later that day. (*See* ECF No. 132-6, Ex. 26.)  On a recording of the call, Plaintiff states that she had flown the last 15 days and had "called in sick only because . . . [she] felt so worn out, [she] just couldn't get to an early checkout" because she "was so tired." (*Id.*)  While Plaintiff mentions that she has an "FML[] condition" and called out because she was "worn out about it" she also makes clear that had she been granted "a later check-in, [she] would have been absolutely with bells on at work." (*Id.*)  Plaintiff was told that because she had called in her FMLA leave, she could not be assigned to that flight. (*Id.*)

After this call, an inflight services supervisor for United notified Mr. Waterman that Plaintiff was seemingly "using her FMLA because she didn't get her preference." (Reply Rule 56.1 Stmt. ¶ 64.)  Mr. Waterman brought this information to the attention of his supervisor, both of whom listened to the recording of the call and decided that an investigation into Plaintiff's actions was required. (*Id.* ¶ 65.)  On January 2, 2016, Mr. Waterman informed Plaintiff that he was in possession of adverse information. (*Id.* ¶ 68.)  Plaintiff offered her first explanation, outside of those offered on the call, for calling out. (*Id.* ¶ 69.)  She stated that she had a physical therapy appointment and was seeing or being treated by a doctor on December 31, 2015. (*Id.*)  Notably, it is undisputed that Plaintiff does not mention this physical therapy or doctor's appointment during the December 31 call where she volunteered to work out of JFK.  In fact, the only appointment mentioned during that call was "a doctor's appointment on the 5th," which, given the timing, is presumably referring to January 5. (Exhibit 26.)  Mr. Waterman then informed Plaintiff that she was suspended with pay, pending an investigation. (*Id.* ¶ 68.)

The investigation and hearing into Plaintiff's conduct was conducted by Mary Kay Panos, a Base Director for Inflight Services at United. (*Id.* ¶ 79.) Plaintiff was given an opportunity to present evidence, including medical documents, in her own defense. (*Id.* ¶¶ 76–83.) Following the hearing, on February 22, 2016, Ms. Panos issued Plaintiff a Performance Letter of Discipline informing Plaintiff that her employment had been terminated. (*Id.* at ¶ 84.) The letter explained that Plaintiff's actions on December 31 were "inconsistent with United Airlines' Working Together Guidelines based on the expectation [of] [h]onesty, [and] being truthful in all communications, whether oral, written or electronic." (*Id.* at 85.)

Plaintiff commenced this wrongful termination suit on February 6, 2018. (*See* ECF No. 1.) After nearly three years of discovery and development of the factual record, United moves for summary judgment.

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when "it 'might affect the outcome of the suit under the governing law.'" *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. To do so, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.

5

2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *See Niagara*, 315 F.3d at 175. However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (internal citations omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

## III.   PLAINTIFF HAS FAILED TO RAISE AN ISSUE OF MATERIAL FACT AS TO HER GENDER DISCRIMINATION CLAIMS

Title VII[1] prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Discrimination claims under Title VII are analyzed pursuant to the burden shifting framework articulated by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973); *see D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194–95 (2d Cir. 2007); *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 73–

---

[1] Because "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII," they are analyzed together. *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011).

74 (2d Cir. 2015). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff establishes a prima facie case of discrimination, the defendant may rebut that showing by providing a legitimate, nondiscriminatory reason for its actions. *Id.* At that point, any presumption of discrimination drops out of the analysis and the defendant is entitled to summary judgment unless the plaintiff, who bears the "final and ultimate burden," demonstrates that the defendant's proffered reasons are in fact a pretext. *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014).

Plaintiff here is able to establish a prima facie case for gender discrimination under Title VII, but fails to raise a triable issue of fact regarding whether United's non-discriminatory reasons for the termination of her employment were pretextual.

## A. Plaintiff Has Established a Prima Facie Case of Discrimination

To state a prima facie case of employment discrimination under Title VII, a plaintiff must demonstrate that (1) she was a member of a protected class (e.g., gender or persons who are at least 40 years of age), (2) she was qualified for the position she held, (3) she suffered an adverse employment action, and (4) such action occurred under circumstances giving rise to an inference of discriminatory intent. *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *D'Cunha*, 479 F.3d at 195. "Although the burden at the initial stage of the *McDonnell Douglas* analysis is 'minimal,' [a plaintiff] must adduce some evidence to support . . . [her] prima facie discrimination claims to avoid summary judgment." *Jimenez v. Donahoe*, 968 F. Supp. 2d 609, 620 (S.D.N.Y. 2013) (quoting *Scoria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997)). Here, only the fourth element of Plaintiff's prima facie case—an inference of discriminatory intent—is in dispute.

The challenged element requires Plaintiff to allege that the adverse employment action she suffered—here, termination—occurred under circumstances giving rise to an inference of discrimination. As the undisputed facts demonstrate, on November 4, 2015, Plaintiff received a telephone call from her supervisor, Winson Waterman, who informed her that her emergency transfer request had been denied. (Reply Rule 56.1 Stmt. ¶ 40.) Mr. Waterman also commented to Plaintiff that if she "wanted to take time off to be a mother, then this wasn't the job for [her] and [she] should quit." (*Id.* ¶ 41.) While the law is clear that comments by someone who was not involved in the decisionmaking of the adverse employment action are generally insufficient to raise an inference of discrimination, it is also clear that Mr. Waterman played some role in the investigation that led to Plaintiff's termination. *See Howard v. City of New York*, 602 F. App'x 545, 547 (2d Cir. 2015) (finding that an individual's alleged discriminatory comment did not raise an inference of discrimination because that individual "had no decision-making authority in terminating" the plaintiff); *Stevens v. New York*, at \*6 (S.D.N.Y. July 20, 2011) ("[W]here a supervisor has no input into a termination decision, that supervisor's beliefs, actions, and statements do not give rise to [an inference of discrimination].") Here, while Mr. Waterman was not the final decisionmaker on Plaintiff's termination, Plaintiff has established that he at least had input into the termination decision. Mr. Waterman was informed of Plaintiff's December 31 phone call attempting to volunteer to work a flight in the New York area while she was supposed to be using her FMLA. (Reply Rule 56.1 Stmt. ¶ 63.) Mr. Waterman then brought this information to the attention of his supervisor, Alex Barreto. (*Id.* ¶ 65.) Together, Messrs. Waterman and Barreto listened to the recording of Plaintiff's December 31 phone call and decided that an investigation was required. (*Id.*) While that investigation, and final termination decision, was carried out by Kay Panos (against whom Plaintiff proffers no evidence of discriminatory intent) the deposition

8

testimony of Mr. Barreto indicates that Mr. Waterman was providing Ms. Panos with information for the investigation. All three individuals met to discuss the information and decided that "the case should be taken to termination," and that a hearing should be held. (Ex. 38, 49:3-52:7.) Thus, the involvement of Mr. Waterman in these circumstances gives rise to at least an inference of discrimination sufficient to establish a prima facie case of discrimination.

## B. United Has Offered a Legitimate, Non-Discriminatory Reason for Plaintiff's Termination

If a plaintiff demonstrates a prima facie case of discrimination, the burden shifts to the defendants to "articulate some legitimate, nondiscriminatory reason for its action," although it "need not persuade the court that it was actually motivated by the proffered reason." *Delaney v. Bank of America Corp.*, 766 F.3d 163, 168 (2d Cir. 2014). To carry its burden, "defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center, et al., v. Hicks*, 509 US 502, 507 (1994) (emphasis in original). If a defendant carries its burden, "the presumption raised by the prima facie case is rebutted and drops from the case." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). A defendant is then entitled to summary judgment unless plaintiff can show intentional discrimination by a preponderance of evidence. *Id.* Here, Plaintiff's claim fails because she has not provided sufficient evidence to support a finding by a reasonable jury that United's proffered non-discriminatory reasons for her termination were pretext for discrimination.

United has met its burden of production in presenting a legitimate, non-discriminatory reason for Plaintiff's termination. United contends that Plaintiff's employment was terminated because United determined, following an investigation, that Plaintiff was dishonest when she invoked an approved FMLA leave in order to avoid working an assigned flight from her

9

Washington, D.C. duty station at Dulles airport, only to immediately volunteer to work a different flight scheduled to leave a few hours later from an airport closer to her home. (Reply Mem. in Support of Mot. for Summ. J. ("Def.'s Reply Mem."), ECF No. 148, at 5–7; Reply Rule 56.1 Stmt. ¶¶ 50–62.)

It is undisputed that on December 30, 2015, Plaintiff landed at Dulles at 7:30 a.m. after working a return flight from Brazil. (Reply Rule 56.1 Stmt. ¶ 50.) Despite knowing that she was on "Reserve" status—a status requiring her to be on call and at Dulles to work another flight within four hours—Plaintiff flew home to New York. (*Id.* ¶¶ 51, 52.) Plaintiff testified at her deposition, that when she left Dulles on December 30 to fly home to New York, she "was pretty sure" she would not be able to come back to Dulles for work on December 31. (*Id.* at ¶ 53.) At approximately 7:00 p.m. on December 30, Plaintiff was assigned to "deadhead[2]" to Los Angeles from Dulles at 7:38 a.m. on December 31, 2015. (*Id.* ¶ 54.) At 10:51 p.m. after unsuccessfully attempting to find coverage for her flight or trade for a later trip time, Plaintiff called the Flight Attendant Support Team and stated that she would "like to call in FMLA for myself for tomorrow." (*Id.* ¶ 57; ECF No. 121-24, Ex. U.) Activating her FMLA leave of absence ensured that Plaintiff would not have to be on the morning flight from Dulles to Los Angeles. (*Id.* ¶ 60.)

On December 31, 2015, at approximately 8:37 a.m. Plaintiff called the Dulles crew desk and volunteered for a flight out of John F. Kennedy Airport despite being on FMLA leave. (*See* ECF No. 132-6, Ex. 26.) On a recording of the call, Plaintiff states that she had flown the last 15 days and had "called in sick only because . . . [she] felt so worn out, [she] just couldn't get to an early checkout" because she "was so tired." (*Id.*) Plaintiff mentions that she has an "FML[]" condition" and that she was "worn out about it," but also makes clear that had she been granted "a

---

[2] "Deadheading" means transporting a flight attendant to or from a flight assignment.

10

later check-in, [she] would have been absolutely with bells on at work." (*Id.*)  This December 31 phone call triggered United's investigation into Plaintiff's behavior, which concluded that Plaintiff made multiple misrepresentations on the December 31 call, and during the investigation, in violation of United Airlines Working Together Guidelines. (Reply Rule 56.1 Stmt. ¶¶ 84, 85.) Lying in violation of a company policy is undoubtedly a legitimate, non-discriminatory reason for terminating an employee.  *Opoku-Acheampong v. Depository Tr. Co.*, 2005 WL 1902847, at \*4 n.3 (S.D.N.Y. Aug. 9, 2005); *see also Gonzalez v. United Parcel Serv.*, 2017 WL 8780567, at \*2 (S.D.N.Y. Nov. 8, 2017) (holding that lying to management during an investigation established a legitimate, non-discriminatory reason for termination.)

## C. Plaintiff Fails to Rebut United's Non-Discriminatory Reason as Pretextual

Once a defendant articulates a legitimate, non-discriminatory reason, the Plaintiff must introduce evidence from which a reasonable jury could decide, by a preponderance of the evidence, that the employer's proffered explanation is pretext for discrimination. *Abdu-Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 467 (2d. Cir. 2001).  The Second Circuit has made clear that "there are two distinct ways for a plaintiff to prevail – either by providing that a discriminatory motive, more likely than not, motivated the defendants or by proving that the reasons given by the defendants are not true and that discrimination is the real reason for the actions." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (internal quotation marks omitted).  Plaintiff must offer "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock*, 224 F.3d at 42 (internal quotation marks and alterations omitted).  At this stage, "[c]onclusory and speculative

11

allegations will not suffice to demonstrate discriminatory intent." *Henny v. New York State*, 842 F. Supp. 2d 530, 553 (S.D.N.Y. 2012).

Plaintiff has not responded with sufficient evidence to support a rational finding of pretext by a reasonable jury.  In a rather conclusory fashion, Plaintiff claims that Defendant's reasons are "fabricated" and "built on a mountain of inconsistencies and false evidence."  (Pl.'s Opp'n at 7.) But simply stating that "the employer's reason is unpersuasive, or even obviously contrived" is insufficient to defeat an employer's motion for summary judgment.  *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 146 (2000). Plaintiff argues that United ignores the fact that her termination coincided with the denial of her emergency transfer request to manage a pregnancy related condition.  (*Id.*)  But Plaintiff has provided no evidence linking the denial of this request to discriminatory gender animus on behalf of United.  Moreover, the denial of Plaintiff's emergency transfer request did not "coincide" with her termination, rather it preceded her termination by approximately four months.  (Reply Rule 56.1 Stmt. ¶¶ 4, 32, 40.)  Plaintiff's mere disagreement with her termination is insufficient for her to survive summary judgment.  Indeed, the scant attention given to this issue in Plaintiff's briefing underscores the lack of evidence Plaintiff has adduced that would demonstrate a pretextual nature of United's articulated reason. Accordingly, Plaintiff's Title VII claim fails as a matter of law.

### D.  New York City Human Rights Law – Gender Discrimination

Plaintiff also raises a claim for gender discrimination under the NYCHRL.  (Compl. ¶¶ 72–75.)  The NYCHRL provides:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent ... because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

N.Y.C. Admin. Code § 8–107. The NYCHRL was amended by the Restoration Act, thus "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing [the NYCHRL's] provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." *Ya-Chen Chen*, 805 F.3d at 75 (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). NYCHRL discrimination claims are also analyzed under the *McDonnell Douglas* burden-shifting test. *See Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 112–13 (N.Y. App. Div. 2012) (holding that courts may apply the *McDonnell Douglas* approach or other analytical frameworks under NYCHRL).

Here, Defendant moves for summary judgment of Plaintiff's NYCHRL claim for gender discrimination. Plaintiff relies on the same factual bases underpinning her federal and state discrimination claims but relies on the NYCHRL's "lower standard" to make out her city law claim. (Pl.'s Opp'n at 8.) After a review of the record, summary judgment is appropriate to United because there is no evidence from which a reasonable jury could conclude that Plaintiff was terminated from her job due to her gender.

As noted earlier, Plaintiff offers no evidence of any discriminatory animus on behalf of Kay Panos, the ultimate decision maker on the propriety of Plaintiff's termination. On the other hand, there is sufficient evidentiary support that Plaintiff was terminated for a non-discriminatory reason; namely her invocation of an approved FMLA leave to avoid working a flight out of Dulles, only to hours later volunteer to work a flight leaving from an airport closer to her home. While the NYCHRL has a more liberal standard of review, a defendant is still entitled to summary judgment where, as here, the record establishes that discrimination played no role in its actions.

*Velazco v. Columbus Citizens Found.*, 2015 WL 4002378, at \*1 (S.D.N.Y. June 22, 2015).

Defendant is entitled to summary judgment on Plaintiff's NYCHRL claim. [3]

## IV.   DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS

### A. Plaintiff Fails to Establish a Prima Facie Case for Disability Discrimination

Disability discrimination claims under the ADA and NYSHRL[4] § 296 are analyzed under the *McDonnell Douglas* burden-shifting analysis that is outlined above. *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). As with Plaintiff's gender discrimination claims, she must establish a prima facie case of disability discrimination. *Id.* To do so, a plaintiff must demonstrate that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010). For the purposes of this motion, Defendant has conceded that Plaintiff has established the first three elements of her disability discrimination claim. (Def.'s Mot. at 16.) Thus, the only remaining question is whether Plaintiff has presented sufficient evidence that her termination was "because of" her disability[5] to

---

[3] This analysis is equally applicable to Plaintiff's NYCHRL claim based upon disability discrimination. Plaintiff has failed to offer evidence showing that a reasonable jury could conclude that her termination was motivated by her gender or disability. Therefore, Plaintiff's NYCHRL claim based upon her disability is also dismissed.

[4] Because "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims," they are analyzed together. *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004).

[5] Plaintiff's stated disability is "a spinal condition that left her with significant pain and unable to sleep during periods of exacerbation." (Compl. ¶¶ 69, 77, 84.) The Complaint is devoid of any factual allegation that Plaintiff's disability was a pregnancy related condition. The counts related to disability discrimination appear to be based solely upon her spinal condition. (*Id.*) Plaintiff's briefing also appears to build her disability discrimination claim upon an injury she suffered on the job in June 2014. (Pl.'s Opp'n at 10, n.1.)

satisfy her burden of establishing a prima facie case of discrimination under the *McDonnell Douglas* framework.

Plaintiff again points to the denial of her temporary emergency transfer as proof of United's discriminatory conduct. (Pl.'s Opp'n at 11–12.) Plaintiff claims that United denied her emergency transfer under the pretext that the request was based on "commuting issues," despite her citing her medical issues as the reason for the request. (*Id.*) But Plaintiff marshals no evidence to connect the denial of her temporary transfer to any disability discrimination on the part of United. In fact, it is undisputed that the decision to deny Plaintiff's emergency transfer was made by Elizabeth Cavanaugh, (Reply Rule 56.1 Stmt. ¶ 32.), and at oral argument Plaintiff's counsel made clear that Plaintiff was not claiming that Ms. Cavanaugh had displayed any discriminatory animus. (*See* Tr. of Oral Arg., dated June 24, 2021, at 61:2–10: "MS. DEMAREST GOLD: Okay. The decision-maker -- there are several emails and communications and representations as to who that might mean in the record. And so there was -- there was a Ms. Cavanagh involved, who's a labor relations person. THE COURT: You claim that she had discriminatory animus? MS. DEMAREST GOLD: No.")

Plaintiff also argues that United's investigation into her behavior was flawed because it was based on the "false assertion that she was untruthful" and because Mr. Waterman refused to accept her medical documentation at various points during the investigation. (Pl.'s Opp'n at 12–15.) This argument is unpersuasive for two reasons. First, Plaintiff's record citations to support

---

Plaintiff's briefing notes that this injury is her "qualifying disability" and resulted in Plaintiff experiencing "persistent neck and arm pain." Only at oral argument did Plaintiff's counsel for the first time articulate that her client's disability was pregnancy related. (Tr. of Oral Arg., dated June 24, 2021, 62: 11-14.) But this Court need not consider arguments that are raised for the first time at oral argument. *See, e.g., United States v. Barnes*, 158 F.3d 662, 672 (2d Cir.1998) ("Normally, we will not consider arguments raised for the first time in a reply brief, let alone [at or] after oral argument.") In any event, just as Plaintiff fails to cite evidence to connect her spinal condition to her termination, she also fails to show that any pregnancy related condition was even a partial motivation for her termination.

this argument do not create a genuine dispute of material fact, as Plaintiff points to no evidence connecting her spinal condition (or any disability) to her termination. Indeed, Plaintiff cites mainly to her own declaration, deposition testimony, and handwritten notes taken during the investigation. (*Id.*) Plaintiff cannot create an issue of fact simply by citing her own deposition and affidavit testimony without more. *Kunik v. New York City Dep't of Educ.*, 436 F. Supp. 3d 684, 695 (S.D.N.Y. 2020) (collecting cases and noting that "[i]n the face of contemporaneous evidence . . . [Plaintiff's] self-serving comments from her deposition after the filing of this lawsuit cannot create an issue of fact . . . .").

Second, Plaintiff ignores the evidence that her medical records were accepted and considered by Ms. Panos at Plaintiff's termination hearing. (Reply Rule 56.1 Stmt. ¶ 81, Panos Dep. 132:12–133:10.) Plaintiff's statements to the contrary, without evidentiary support, are insufficient. Furthermore, Plaintiff's argument regarding medical records misses the mark because at no point has United disputed that Plaintiff was feeling symptoms of her FMLA medical condition when she initially activated her FMLA leave on the evening of December 30 for the following day. (Def's Reply at 7.) To be sure, United accepted her explanation and granted her request to activate her leave. (Reply Rule 56.1 Stmt. ¶ 59.) What triggered United's investigation and termination was Plaintiff's attempt to volunteer to work a flight out of a different airport near her home, when she had activated her FMLA leave for the Dulles flight she was originally scheduled to be on coupled with her shifting explanations for why she did so. (*Id.* ¶¶ 63, 64.) Simply put, Plaintiff has failed to present sufficient evidence showing that that her termination was "because of" her disability and thus, fails to establish a *prima facie* case of disability discrimination.

16

**B. Reasonable Accommodation Claim**

Plaintiff also claims that United refused to make any attempt to accommodate her medical conditions. (Compl. ¶¶ 69, 77, 84; Pl.'s Opp'n at 18.) For a plaintiff to establish a *prima facie* claim under the ADA based on failure to provide a reasonable accommodation, it must demonstrate that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan,* 711 F.3d at 125–26.

Plaintiff argues that United's "refusal to permit [her] to transfer closer to her doctors" amounts to a refusal to offer her a reasonable accommodation. (Pl.'s Opp'n at 17–18.) Putting aside the reasons for Plaintiff's requested transfer, it is undisputed that United offered Plaintiff two accommodations that would have allowed her to relocate to the New York area: (1) Plaintiff was offered the opportunity to take an FMLA leave of absence, or (2) to take a standard transfer to Newark airport. (Reply Rule 56.1 Stmt. ¶¶ 33–36.) These two options, which were rejected by Plaintiff, are "plainly reasonable" and entitle United to summary judgment on Plaintiff's reasonable accommodation claim. *See Wernick v. Fed. Reserve Bank of N.Y.,* 91 F.3d 379, 385 (2d Cir.1996)

A reasonable accommodation is one that "enable[s] an individual with a disability who is qualified to perform the essential functions of that position . . . to enjoy equal benefits and privileges of employment." 29 C.F.R. § 1630.2(o)(1)(ii), (iii). Although the preferred accommodation of the disabled individual should be considered, "the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide."

*Id.* It is undisputed that Plaintiff was given an opportunity to transfer to Newark; her refusal to take the accommodation because she did not want to be "stuck there for at least 6 months" does nothing to detract from the reasonableness of the accommodation provided by United. *See Fink v. N.Y.C. Dep't of Personnel*, 53 F.3d 565 (an employer need not "provide every accommodation the disabled employee may request, so long as the accommodation provided is reasonable."); Reply Rule 56.1 Stmt. ¶ 30; Ex. I.) It is reasonable to expect that Plaintiff could have transferred to Newark, near her doctors and her spouse, and continued to perform the essential functions of her employment.

Moreover, Plaintiff's argument that a standard transfer was not a "meaningful" option because it would take too long to process compared to an emergency transfer is belied by her actions. While Plaintiff initially rejected the standard transfer to Newark that was available to her, two months later she applied for a standard transfer to Newark. (Reply Rule 56.1 Stmt. ¶ 43.) If a transfer was a reasonable option in late December 2015, it stands to reason that this option was reasonable two months earlier. Plaintiff's reasonable accommodation claim fails as a matter of law.

## V.    PLAINTIFF'S FMLA CLAIMS ARE DISMISSED AS A MATTER OF LAW

Plaintiff raises claims for both interference and retaliation under the FMLA. (Compl. ¶¶ 88–97; Pl.'s Opp'n at 18–23.) Neither claim has merit.

### A.   FMLA Interference Claim

To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA. *See* 29 U.S.C. § 2615(a)(1). "[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an

employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

Plaintiff bases her interference claim on the denial of an FMLA request she submitted on January 4, 2016, seeking to retroactively cover an absence which occurred from November 27, 2015 to December 7, 2015. (Pl.'s Opp'n at 19–20.) United denied Plaintiff's request because she did not provide the required medical certification within 15 days of her absence as required by United's company policy and explicitly permitted by 29 C.F.R. § 825.305(b)[6]. (Reply Rule 56.1 Stmt. ¶ 44, ECF No. 121-20, Ex. Q.) It is undisputed that Plaintiff did not submit her medical certification for this absence until January 4, 2016. (*Id.*; ECF No. 142, Ex. 16.) Failure to submit a timely medical certification is a valid reason for denying an FMLA leave request. *See Porter v. Potter*, 2010 WL 9047894 at *10 (E.D.N.Y. Jan. 20, 2010) (granting summary judgment on plaintiff's FMLA interference claim due to plaintiff's failure to provide sufficient medical certification). Thus, Plaintiff cannot prevail on her interference claim as a matter of law.

Plaintiff seemingly argues that United should have retroactively approved her FMLA leave request when it received the completed medical forms nearly a month after her absence ended. (Pl.'s Opp'n at 19–20.) But Plaintiff provides no support for the proposition that an

---

[6] The full text of 29 C.F.R. § 825.305(b) reads: "Timing. In most cases, the employer should request that an employee furnish certification at the time the employee gives notice of the need for leave or within five business days thereafter, or, in the case of unforeseen leave, within five business days after the leave commences. The employer may request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration. The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification."

employer must abandon the 15-day deadline for submitting FMLA paperwork by retroactively approving claims supported by paperwork submitted weeks after that deadline expired.[7] *Priddy v. Moses H. Cone Mem'l Hosp. Operating Corp.*, 2020 WL 2572285, at *6 (M.D.N.C. May 21, 2020), *aff'd*, 855 F. App'x 166 (4th Cir. 2021).

Plaintiff additionally argues that 29 C.F.R. § 825.305(b) excuses her failure to provide medical certification for her leave because of her doctor's failure to complete the paperwork, and her "good faith" efforts to comply. That argument is unsupported by the plain language of the regulation. The regulation only requires than an employer give the employee a minimum of 15 calendar days to provide medical documentation supporting an absence. It does not state that an employer must wait in perpetuity for proof, and retroactively approve the absence any time late documents are received. Accordingly, United is entitled to judgment as a matter of law with respect to Plaintiff's interference claim.

## B. FMLA Retaliation Claim

FMLA retaliation claims are also analyzed under the *McDonnell Douglas* burden-shifting test. *Graziadio*, 817 F.3d at 429. "To establish a prima faci[e] case of FMLA retaliation, a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Id.* (quoting *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir.2012)). As outlined above when discussing Plaintiff Title VII claim, "if the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions; if the defendant does so, the plaintiff must then show that defendant's proffered explanation is pretextual." *Id.*

---

[7] Indeed, while "an employer and an employee can mutually agree that leave be retroactively designated as FMLA leave," such retroactive designation is permissive, not mandatory. 29 C.F.R. § 825.301(d).

Even assuming, *arguendo*, that Plaintiff can establish her prima facie case, she cannot establish that United's proffered reason for her termination was pretextual.  Plaintiff does not provide any evidence that she was fired in retaliation for taking FMLA leave.  United's motion for summary judgment on Plaintiffs' FMLA retaliation claim is granted.

## VI.    CONCLUSION

Defendants' motion for summary judgment dismissing Plaintiff's claims, (ECF Nos. 121, 123), is GRANTED. The Clerk of Court is directed to close the motion and the case accordingly.


Dated: New York, New York
       September 7, 2021

SO ORDERED.

GEORGE B. DANIELS
United States District Judge